Bland, Chancellor.
Decreed, that the real estate of the late Thomas Tongue be sold for the payment of his debts; that Robert Garner be appointed trustee to make the sale, &c. that one-third of the purchase money be paid in cash, one-third in six months, and the residue in twelve months from the day of sale, with interest, &c. and that the trustee give notice to the creditors of Thomas Tongue, deceased, to file the *344 vouchers of their claims in the Chancery office within four months from the day of sale.
Ann Tongue the widow, on the 24th of January, 1827, filed her petition, in which she stated, that she was entitled to dower in the real estate directed to be sold; and thereupon prayed, that her dower might be assigned to her and that a commission might be issued to the persons therein named for that purpose. On the same day it was Ordered, that a commission issue as prayed.
By an order of the 6th of March, 1827, passed on the application 'of sundry creditors, the terms of sale specified in the decree of the 7th of November, were altered so as to direct that one-third of the purchase money should be paid in six months, one other third in twelve months, and the residue in eighteen months from the day^ of sale with interest.
A commission having been issued as prayed, to assign to the widow her dower; the commissioners, on the 18th of April, 1827, made a return setting forth in what manner they had assigned dower to the widow as directed. But it does not-appear, that any confirmation of the return, or that a decree for the dower so assigned was ever passed. (a)
The trustee Garner, on the I9th of April, 1827, made a general report of the sales he had made on the 15th of January, and on the 31st of March previous, amounting to $9,661 16|. Upon which it was Ordered, that they be ratified, unless cause shewn to the contrary, on or before the 19th of July following.
,Robert Welsh of Ben, on the 14th of June,-1827, filed his petition on oath, in which he stated, that he had purchased of the trustee Garner a part of the real estate,of the late Thomas Tongue, subject to the dower of his widow; but that although the dower had before been assigned to her, he was not then informed in what manner it had been laid out; this petitioner had since understood, that in regard to quantity and quality she had, had assigned to her at least one moiety of the land; that in that part laid off to her, was included the dwelling-house of her late husband, and all those other buildings, without the use of which the tract of land could not be advantageously used and cultivated; that since the assignment of dower and sale, the trustee had entered upon the part *345 allotted to the widow, claiming to be her agent or tenant; and Was then cultivating it in a very injurious and destructive manner; that a certain Gassaway Simmons, with the connivance of the trustee, had taken possession of about nineteen acres of the land which he had professed to sell to this petitioner. Whereupon he prayed that the sale to him might not be confirmed.
15th June, 1827.
Bland, Chancellor.
Ordered, that the mat» ter of this petition be heard on the 13th day of July next; that the parties be authorized to take testimony in relation to the matter thereof, before any justice of the peace on giving three days notice as usual; and that the final ratification of the sale be postponed until that day: Provided, that a copy of this order together with a copy of the petition be served on the trustee and the widow on or before the 27th instant.
The widow Ann Tongue and the trustee Garner, on the 27th of July, 1827, put in their separate answers on oath to the petition of Welch, in which they denied specially and particularly the material matters of fact set forth by Welch. And the depositions of several witnesses were taken and returned under this order.
Robert Welch of Ren, by his petition, filed on the 15th of January, 1828, stated, that he had understood, that the trustee Garner had lately sold the tract of land of which he, Welsh, had been, as stated in his former petition, the purchaser, to John Collinson; that the trustee had thereby indicated an intention to abandon his defence as set forth in his answer of the 27th of July last. Whereupon the petitioner prayed, that the trustee might be ordered to report, &c.
17th January, 1828.
Bland, Chancellor.
Ordered, that the trustee Garner forthwith make a full report of his proceedings as prayed; and that the matter of the said petition be heard on the 15th of February next; Provided, that a copy of this order together with a copy of the said petition be served on the said Garner and on Ann Tongue, on or before the 1st of February next.
The trustee Garner, on the 26th of April, 1828, reported on oath, that since the sale made to Robert Welch of Ben, and the report thereof, he, the trustee, at the solicitation of John Collinson, and with the consent of Welch, had agreed to substitute Collinson as purchaser for Welch, with the approbation of the Chancellor. To this report Welch filed his assent, and the matter was submitted,
*346 2d July, 1828.
Bland, Chancellor.
Ordered, that the sales made and reported by the trustee Robert Garner be absolutely ratified, no cause having been shewn, although notice had been given as required. That John Collinson be considered as the purchaser, and with his consent as standing in the place of the said Robert Welch of Ben; as appears by the report of the said trustee, and by the assent of the said Welch.
William. Simmons, Richard Simmons, James Owens, John Sell-man, The Farmers Bank of Maryland, and William Fowle and Henry Dangerfield, trading under the firm of William Fowle 8; Co. creditors of the late Thomas Tongue, by their petition, filed on the 2d of July, 1828, stated, that the greater part of the purchase money on the sale made by the trustee Garner had then become due; but had not been brought into court or accounted for. Whereupon they prayed, that the trustee might be ordered to report, to bring into court the money or bonds, &c.
2d July, 1828.
Bland, Chancellor.—
Ordered, that the trustee Robert Garner forthwith make a particular report of his proceedings on oath; and also bring into this court the money collected and the bonds taken by him, as prayed: Provided, that a copy of this order together with a copy of the said petition be served on the said trustee on or before the first day of August next.
The trustee having failed to comply with this order, on application of the petitioners, an attachment was ordered against him on the 4th of September, 1828; and, on the 11th following, he made a report on oath, in which he stated, that having but recently been informed of the final ratification of the sales, he could not sooner inform the court of the non-compliance of the purchasers; and further, that he had received a part of the purchase money, an account of which he exhibited, &c.
William Fowle and Henry Dangerfield, trading under the firm of William Fowle 8f Co., The Farmers Bank of Maryland, William Simmons, Richard Simmons, James Owens and John Sellman, creditors of the late Thomas Tongue, with the trustee Garner, by their petition stated, that a part of the real estate had been sold to William H. Hall, junior, who, to secure the payment of the purchase money, had on the day of sale given bond, with William H. Hall and Thomas I. Hall, as his sureties; and had paid a part of the purchase money, leaving a balance then due. That another *347 part of the estate had been sold to Robert II. McPherson, who had paid no part of the purchase money, the whole of which was then due. Whereupon they prayed that those purchasers might be ordered to pay, &c.
15th September, 1828.
Bland, Chancellor.—
Ordered, that William II. Ilall, junior, William II. Hall and Thomas I. Hall, bring into this court the sum of $264 72, with interest thereon from the 1st of November, 1827, until brought in. And that Robert H. McPherson also bring into this court the sum of $780 50, with interest from the 15th of January, 1827, until brought in, or shew cause to the contrary on or before the 1st of November next; Provided, that a copy of this petition and order be served on the said William II. Hall, junior, William H. Hall, Thomas I. Hall and Robert II. McPherson, before the 15th of October next.
The same petitioners afterwards filed another petition, in which they stated, that the purchaser John Collinson had, to secure the payment of the purchase money, given his bond with James Tongue and Gideon G. Tongue as his sureties; and that the purchase money had not been paid since it became due. Upon which they prayed that payment might be ordered, &c.

2d October, 1828.

Eland, Chancellor.—
Ordered, that John Collinson, James Tongue, and Gideon B. Tongue, bring into this court the sum of $8,575 67, with interest from the 13th of May, 1827, being the balance of the purchase money now due, or shew good cause to the contrary, on or before the first of November next; Provided, that a copy of this petition and order be served on the said John, James, and Gideon, before the 15th day of the present month.
To this petition John, James, and Gideon answered, shewing for cause, that the estate of the late Thomas Tongue was largely indebted to John Collinson, in satisfaction of which he claimed at least a dividend of the proceeds of sale, and was willing and ready to bring in the balance; to ascertain which they prayed, that the auditor might be directed to state an account. And the solicitor for the petitioners agreed, that an account should be first stated as prayed.
8th November, 1828.
Bland, Chancellor.
The petition of William Simmons and others against William H. Hall, junior, and others, having been submitted; and it appearing that copies *348 had been served as required; and they having failed to bring in the several sums of money therein mentioned, or to shew cause to the contrary, the proceedings were read and considered.
Whereupon it is Decreed, that Robert Garner, the trustee appointed by the original decree, proceed to make sale of the house and lot in the village of Tracy’s Landing, heretofore sold by him to Robert ID McPherson, for the payment of the purchase money due thereon; and that the said sale be at the risk of the said Robert H. McPherson. And it is further Decreed, that the said trustee proceed to make sale of the parcel of land heretofore sold by him to William H. Hall, junior, for the payment of the balance of the purchase money due thereon; and that the said sale be at the risk of the said William II. Hall, junior. And it is further Decreed, that the sales made under this order be for cash, payable on the day of sale, or on the ratification thereof. In all other respects the said trustee is directed to. conform to the original decree, according to which he hath given bond for the faithful performance of the trust reposed in him by that or any future decree or order in the premises.
Jinn Tongue now moved on her petition, filed on the 18th of October, 1826, that the commissions of the trustee Garner should be adjusted and awarded to her as therein set forth and agreed.
13th April, 1829.
Bland, Chancellor.—
Ordered, that Ann Tongue be allowed the sum of $319 83, out of the proceeds of the sales of the real estate of her deceased husband Thom,as Tongue, the same being the amount of commissions allowed to the trustee on the proceeds of the said sales. (b) And the trustee Robert Garner is hereby allowed the sum of §105 for expenses attending the sale and survey of the said estate.
The trustee Garner, on the 23d of April, 1829, reported, that in pursuance of the decree of the 8th of November, he had made sale of that part of the real estate of which Robert II. McPherson bad been the purchaser to James Tongue, for §401. And that William H. Hall, junior, who had been the other purchaser of the other part, had paid into court the whole amount of the purchase money due from him. Upon which it was Ordered, that this sale be ratified unless cause shewn to the contrary before the 23d day of June then next.
*349 On the 30th of April, 1829, the auditor filed a report, in which he stated that he had examined all the proceedings and had stated all the claims filed against the estate of Thomas Tongue, deceased; and also an account between the said estate and the trustee, in which the proceeds of sale were applied to the trustee’s expenses, the allowance to the widow in lieu of the trustee’s commissions, the costs of suit, and dividends on all the claims which had been then exhibited. That claims No. 4, 7, 8, 21, 50, 52, 61, 72, 86, 87, 92, 101, 114, 115, 117, and 124, were not proved agreeably to the act of 1798, ch. 101. That the affidavits annexed to claims No. 5, 41, 56, 58, 86, 91, and 119, admit claims in bar, the amount of which, however, were not stated. That the defendants had filed a copy of the list of debts due to the deceased which was returned by his administrator to the Orphans Court; and from that list it appeared that there were accounts which ought to be discounted in bar of claims No. 1, 2, 3, 4, 8, 22, 29, 31, 35, 39, 42, 43, 49, 57, 87 and 101. That claim No. 47 appeared to be for cash paid the deceased in discharge of a note given by the present claimant to the deceased; and was, therefore, clearly inadmissible. That claim No. 52 was the joint note of the deceased, and one T. T. McPherson. A moiety only of which should be allowed, unless evidence should be furnished of the insolvency of McPherson; or that he was a surety for the deceased. That claim No. 90 was the single bill of the deceased and John Collinson, and liable to a similar objection. That claims No. 67, 68, 69 and 70, were for the deceased’s drafts on B. D. R. Mullikin, and accepted by them. No proof had been exhibited of the insolvency of the acceptors. It was also objected, that the original acceptances ought to be produced. That claims No. 108, 109, 110, 111, 112 and 113, were for the deceased’s drafts on JY. C. Dare, and accepted by him. There was no proof of the acceptor’s insolvency. That claim No. 91 was for the deceased’s draft on .7. Sparrow in faA'our of Gassaway Pindall, which was paid by the acceptor. The acceptance was legal evidence that the drawer had funds in the hands of the acceptor; and no proof to the contrary had been exhibited. That claim No. 123 accrued since the death of the deceased. That claim No. 127 was originally a partnership debt. It was now filed, but not proved as a separate debt. That claims No. 128,129,130,131, 132 and 136, were debts due from the firm of Tongue & McPherson, and of T. T. McPherson & Co., of which the deceased was a partner; and *350 should be postponed to the claims of his separate creditors. And that claim No. 135 was for a balance due to the firm of Tongue Sf ■ McPherson; it was not proved. The auditor also reported, that James Murray had filed an assignment for the sum of §40, part of the dividends on claims No. 1 and 2. And. that since the statement of these accounts an additional claim had been filed and stated as No. 137. As the dividend on it wras small, §6 65, the auditor suggested that it should be paid out of the interest received, or to be received by the trustee.
16th July, 1829.
Bland, Chancellor.—
Ordered, that the foregoing statement of the auditor, as to the commissions, expenses, and costs of this suit alone, as therein stated, be confirmed; and ■the trustee is directed to apply the proceeds accordingly.
After which, on the 15th of March, 1831, the auditor filed another report, in which he said, that at the instance of the solicitor of the complainants he had again examined the proceedings. That fourteen additional claims had been filed, which were stated and numbered from 138 to 151 inclusive. From the copy of the list of debts due to Thomas Tongue, deceased, mentioned in the report of the 30th of April, 1829, it appeared, that there were accounts in bar of claims No1. 138, 139, 140, 141, and 147. That claim No. 143 was on a note of Tongue fy McPherson, and should be postponed to the separate creditors of Tongue. That the claim No. 21 of John Collinson as administrator de bonis non of Thomas Tongue, senior, had been withdrawn, and in lieu thereof claims had been filed by John Collinson and Ann his wife, Harriet Waters, and Elizabeth Allen, as legatees of said Tongue, which were stated and numbered 152, 153, and 154. But from the aforesaid copy of the list of debts due to the deceased, it appeared that there were accounts in bar of claims No. 153 and 154.
That claim No. 7 had been withdrawn, and another claim filed, which was stated as No. 155, and is correctly proved. That the account in bar of claim No. 2 was allowed and the objection thereto removed. That claim No. 4 was not proved. The proof offered was a paper purporting to be a copy of a bill obligatory, alleged to have been executed by the deceased, accompanied by the affidavit of the claimant, that the original obligation was lost.
It was not usual to require proof of the sealing and delivery of a bill or bond where the bond itself was filed, and was subject .to inspection. But in the absence of the original, the auditor was *351 inclined to think, that some proof, other than the oath of the claimant, should be offered of its due execution.
That claims No. 52, 108, 109, 110, 111, 112, 113, 115, and 119, were proved. That claim No. 86 was formally proved, except that the amount of the account in bar which was admitted to exist by the affidavit, was not yet stated. That claim No. 87 was the claim of one of the complainants which the auditor thought should be considered as fully proved. That claim No. 101 was formally proved; but from the copy of the list of debts due to the deceased, before alluded to, it appeared, that there was an account in bar wdiich should be credited.
Proof had been filed of the insolvency of B. D. fy R. Mullikin, as was required to sustain claims No. 67, 69 and 70; but the original acceptances had not yet been produced. Additional proofs had been offered in support of claim No. 127. And it how appeared, that sundry assignments had been made by Tongue fy McPherson, on account thereof, which should be credited. The auditor had not re-stated the claim, because he was not satisfied that it ought to be allowed against the estate of the deceased partner, Additional proof had also been offered to sustain claims No. 114, 115, and 117, from which he had re-stated the same as No. 156, 157, and 158; No. 157 and 158 were proved, but No. 156 was not proved.
William Fowle £f Co. as claimants No. 127, on the 2d of May, 1831, filed their exceptions to the auditor’s reports. 1. Because the evidence as exhibited and filed establishes, in behalf of these complainants’ claim, an original liability of Thomas Tongue, as partner of Thomas T. McPherson. 2. Because it establishes a distinct original liability of Thomas Tongue to these exceptants, independent of the partnership of Tongue §• McPherson. And 3. Because it establishes a collateral liability of Thomas Tongue to these exceptants, which operates as beneficially in favour of these exceptants as an original undertaking.
On the 28th of May, 1831, Joseph Allen filed an exception to the auditor’s report, because he had rejected his, Allen’s claim No. 4. And on the same day Mary A. Allen, John Collinson, Gideon G. Tongue, Rezin Estep, Harriet Waters, and Elizabeth Allen, excepted to the auditor’s report, because he had not allowed their claims No. 5, 22, 29, 35, 153, and 154.
6th June, 1831.
Bland, Chancellor.
This case standing ready for hearing on the several reports of the auditor, and the *352 exceptions thereto, the solicitors were heard for and against seve^ ral of the claims; and the proceedings read and considered.
It appears from the auditor’s statements, that he makes frequent reference to certain dividends which some of the creditors had obtained from the personal estate; and it is also stated by the auditor, that from the list, filed by the defendants, of the debts due to the late Thomas Tongue, it appears, that there are accounts which are relied on as discounts in bar of many of the claims. These circumstances very strongly shew the propriety and utility of passing a decree to account against the executor or administrator in all cases where it is alleged and shewn, that there is any personal estate which had been or might be distributed in satisfaction of those creditors who then claimed payment from the proceeds of the realty.
Where there has been, or is then no administration, because of there being no assets, there is no personal representative of the deceased debtor to bring before the court for any purpose. And where the personal estate had been confessedly altogether taken up in making entire satisfaction of some claims, without any proportional distribution among any, it would be idle and unnecessary to call on the executor or administrator to account. But where, as in this instance, it appears, that there had been a distribution of the personalty among the creditors in partial payments; or where there are some personal assets still to be administered, there should be a decree to account against the executor or administrator for his own protection, to save him from being unjustly charged by any creditor whose claim had not been passed upon by this court; and also for the benefit of creditors to force the executor or administrator to account for the whole of the assets which had come to his hands; and to prevent any one creditor from obtaining more than a due proportion of satisfaction from the whole estate of the deceased; and also to relieve the heirs or devisees from every portion of the burthen which should be borne by the personal estate as the natural fund for the payment of debts. For these reasons the whole estate, personal as well as real, should be brought before the court, by a decree to account against the executor or administrator, which in this case has been very improperly omitted, as well as by a decree for a sale of the realty.
These two reports of the auditor have described one hundred and fifty-one claims which have been presented here against the estate of Thomas Tongue, deceased, the proceeds of which the *353 court is now about to distribute. This great multitude of claims are shewn to be susceptible of being placed in several classes; and if they had been so arranged by the auditor, the subjects would have been put into better order, and the necessary investigation thus, in some respects, facilitated. The claims of the originally suing creditors should always be placed by the auditor first in his statement, as having been passed upon by the decree which directed the sale, and immediately after and in connection with all such claims as the original plaintiffs have, as in this instance, indicated in their bill, that they stand liable for as sureties. And then the rest of the claims should be grouped together in successive classes, according to their nature; as separate debts, partnership debts, joint debts, debts due by judgment, bond, note, &c. But this arrangement has seldom or ever been made, and cannot be deemed necessary, or allowed to affect the interests ■of the parties, however desirable it may he as a means of facilitating the inquiries of the Chancellor.
The claims of the originally suing creditors, so far as they have been distinctly set forth in their bill; either as claims in their own right, or in a representative capacity, as executors, &c. are always considered as having been finally decided upon and allowed by the decree directing a sale; since it is clear, that no such decree should be passed unless it had been shewn that there was some debt then due. And upon this ground the decree for a sale, although it may be silent as to the validity of such claims, necessarily establishes them to their whole amount, unless some one, or a part of some one of them, has been rejected altogether; or expressly reserved for further directions, in common with the claims of other creditors who may come in after the decree. (c)
This direction applies to the claim of the plaintiff Richard Simmons, designated as No. 87, which having been tacitly decided upon by the decree of the 7th of November, 1826, must be allowed, notwithstanding the doubt intimated by the auditor.
The plaintiffs Owens and Sellman state, that they, as endorsers of notes for the late Thomas Tongue, may be made to pay as such; and in that way, their claims may be largely increased. And the plaintiff Sellman alleges, that he is liable to a considerable amount as surety of the late Thomas Tongue, on a testamentary bond; so that, by such liability, there is a probability of his claim being *354 considerably augmented. Those creditors to whom these plaintiffs are bound as sureties, are under an obligation to bring in their claims, and offer them for a dividend in this case. If they fail to do so after having had actual notice of this suit, and of the call on them to bring in their claims, they can obtain no satisfaction from the estate of the deceased, after the whole of it has been actually distributed among his creditors; and, consequently, having thus negligently suffered themselves to be excluded from any recourse against the estate of their principal debtor to the prejudice of these plaintiffs, they, as his sureties, will be discharged; or if, after coming in, they fail to establish their claims, so as to obtain a dividend, then these plaintiffs, will, upon like principles, be discharged ; or, if they come in and establish their claims and obtain a dividend, then these plaintiffs can only be bound for the balance. To enable these plaintiffs to avail themselves of a defence, upon one or other of these grounds, against these claims, to which they have referred in their bill, it should be shewn to the auditor and distinctly set forth by him in his statement of those claims, that they are those very liabilities, specified in the bill, against which these plaintiffs ask an indemnity, or a discharge. But, it appears, though not as clearly as it ought, that those creditors, to whom these plaintiffs were so bound as endorsers or sureties, have filed their claims in this case, and that they now stand, as designated in the auditor’s reports for adjudication. (d)
The auditor reports as to some claims, that the defendants have filed a copy of the list of debts due to this intestate, from which it appears, that there are accounts which ought to be discounted in bar; and as to some other claims, that the affidavits annexed to them admit claims in bar, the amount of which, however, is not specified.
The recouper of the common law, the set-off of the English ■ statute law, and the discounts in bar of our acts of Assembly are, in effect and substance, the same. They refer merely to the opposing of one unconnected just claim against another, in the same suit, to prevent circuity of action; or the bringing of cross suits. The defendant, or he who, under a creditor’s bill, files a distinct account in bar of any claim, thereby assumes the position of a plaintiff, and undertakes, by asserting, in that respect, the affirmative of the matter in litigation, to establish the claim he avers to *355 be due, and insists on having allowed as a discount in bar. And, consequently, it lays upon him to shew how much, if any, is due on the claim so offered as a discount in bar, in like manner as if he had instituted an original action for the recovery of the debt shewm by the account filed in bar, unconnected with any other claim whatever. (e)
With regard to those cases where some discount in bar has been admitted in the affidavit of the claimant himself; such an admission only amounts to an indefinite acknowledgment, that some such opposing claim may exist, which he, the deponent, is willing to meet and adjust; (f) but it cannot be received as a concession, that his own authenticated claim has been entirely satisfied by one which it does not lay upon him to ascertain; and which he who holds it, apparently estimates at so low a value as to neglect to bring forward and establish. The affidavit prescribed by the act of Assembly in relation to intestates’ estates, and which act is taken as a guide by this court in cases of this sort, requires the deponent to swear, that he had received no satisfaction, ‘except what, if any, is credited;’ (g) but these affidavits credit nothing; and the deponents leave us distinctly to understand, that it was not in their power to give credit for any particular amount as a discount from their claim. And therefore, as in an action of account, if the defendant refuses to account, the plaintiff shall recover according to the value mentioned in the declaration; (h) so here, if the party fails or neglects to shew the amount of the discount to which he is entitled, the -whole claim must be allowed.
I am therefore of opinion, that in all these cases, as well where an account in bar has been filed by the defendants, and it has not been regularly authenticated according to the course of the court, as where a discount in bar has been referred to in the affidavit of the claimant himself without specifying the amount, it must be disregarded, and the whole amount of the creditor’s claim must be allowed, as if nothing whatever had been said about any discount in bar. These directions apply first to claims No. 1, 3, 4, 8, 22, 29, 31, 35, 39, 42, 43, 49, 57, 87, 101, 138, 139, 140, 141, 147, 153 and 154; and in the next place to claims No. 41, 56, 58, 86, *356 91 and 119; as to all which, the doubts or objections of the auditor, in these respects, must be overruled.
In the administration of the assets of a deceased debtor by this court, where he had been, in his life-time, a member of a partnership, it is now definitively established, that the partnership creditors must be first satisfied out of the joint funds; and the separate creditors first paid out of the separate estate. (i) Consequently, until the partnership creditors have been thus fully satisfied, the separate creditors can make no claim upon the partnership effects; nor until the separate creditors are satisfied, can the partnership creditors be permitted to take any thing from the separate estate. The debtor, in such cases, has two distinct capacities, the one a natural, the other a conventional capacity; (j) in the one case his capacity is that of a separate individual, in the other it is that of a partner according to the contract among an association of individuals. The creditors of these several capacities are as distinct as the estates so held, in respect of which the credit may be presumed to have been given: and the property of each is applied first to the satisfaction of the creditors of each; because a different course would be, in effect, to apply the property of one man to the payment of the debts of another. "Where a partnership exists nothing can be said properly to belong to each member of it, but his dividend of the surplus after all the partnership debts are paid; so, on the other hand, that alone can be considered as properly the separate estate of an individual which remains, after all his separate debts have been paid. Each of those capacities of the same person is an implied surety for the other; or, in other words, partners are mutually sureties to the creditors for the share of each other; (k) but then it would be unequal and unjust to extend this suretyship, or implied liability beyond the surplus, or the clear estate belonging to each capacity; because the creditors of the one capacity hold it directly bound, and those of the other have only an eventual and secondary claim upon the same capacity after those to whom it was directly bound have been fully satisfied. (l)
But as the assets now to be administered are the proceeds of the separate estate of the late Thomas Tongue, it is clear, that all *357 these claims now made against them, which were debts due from the several firms of Tongue fy McPherson, and from T. T. McPherson 8f Co. of which the late Thomas Tongue was a partner, must be postponed in favour of the claims due from the late Thomas Tongue in his separate capacity. It is alleged, that this separate estate will be wholly insufficient to pay the debts due from the late Thomas Tongue alone; if so, then this postponement will amount to a total rejection of those claims against the several partnerships, as there will he no surplus of this separate estate applicable to them. This direction comprehends claim No. 127, 128, 129, 130, 131, 132, 136 and 143, as to all which the auditor’s objections are deemed valid.
It has been urged, as regards claim No. 127, that although it was, in truth, originally only a claim against the firm of Tongue fy McPherson; yet, that this intestate had, in his life-time, assumed upon himself the payment of it; and had thus made it his own separate debt. It is true, that any one member of a partnership may, by promise or contract, take upon himself the payment of a partnership debt; or the partnership may, in like manner, bind itself to pay a separate debt of any one of its members. But, in this instance, there is no sufficient evidence of any such promise or contract, whereby the late Thomas Tongue had made himself separately liable to pay this debt, due from the firm of Tongue McPherson; and therefore the objection against it has not been removed.
Another class of claims are those made by the holders of some accepted bills of exchange. Where a hill has been accepted, the acceptor is considered as the principal debtor, and primarily liable for the whole amount to all others, the drawer, endorsers, and holder. The acceptance is prima facie evidence against the acceptor of his having in his hands effects of the drawer; and, therefore, if the fact be not so, it lies upon the acceptor to establish the fact to enable him to recover from the drawer, (m) Hence all these claims founded on bills of exchange drawn by the late Thomas Tongue, which had been accepted, must be regarded as claims for which he was not the principal debtor; unless it should be shewn that the acceptor paid it without having in his hands effects of the drawer. And as the drawer and endorsers stand in the relation to each other of a series of sureties, it must be shewn, that each one who stood before, and was, therefore, principal *358 debtor as to him against whose estate the claim is made, is insolvent ; or, according to the rule of this court, the claim will be excluded from any participation in the distribution of the estate upon which it is made. (n)
The auditor says, that the original acceptances ought to be produced. By this I understand it to be objected, that the original bills of exchange themselves have not been produced. In an action at law upon a bill of exchange, on the general issue being pleaded, it is necessary to produce the original bill itself, or to prove that it has been lost, before any evidence can be offered of its contents, (o) And even if, in such action, there is a judgment by default; although it is not necessary, on executing the writ of inquiry, to prove the contract; yet the original bill itself must be produced, (p) But, in the distribution of the real assets, this court is governed by the rules prescribed for the authentication of claims in the analogous distribution of the personal assets. As to which it is declared, by the act in relation to the administration of the personal estates of deceased persons, that in case of a specialty, bond, note, or protested bill of exchange, the voucher shall be the instrument of writing itself, or a proved copy, in case it be lost, with a certificate of the oath, &e. (q)
These directions apply to claims No. 67, 108, 109, 110, 111, 112 and 113, which must be allowed, because the acceptors are shewn to be insolvent; to claims No. 69 and 70, which must be rejected, because the original bills have not been produced or shewn to be lost; and to claim No. 91, which must be rejected, because it is made by an acceptor who has not shewn that he had in his hands at the time no effects of the drawer.
According to the rule of this court, where the deceased, with others, appears to have been jointly bound for the payment of the claim, the creditor must explain the apparent ambiguity, or he will be altogether excluded. He must shew that the deceased was the principal debtor, in which case he will be permitted to come in for the whole amount; or that the deceased was a co-obligor, in which case the creditor will be allowed to claim no more than half; unless he also shews that the other obligor is insolvent; or if the deceased was only a surety, then the creditor must shew that the principal is insolvent. (r)
*359 This direction applies to claim No. 52, which must be rejected, because it has not been shewn whether the late Thomas Tongue was principal or surety ; and to claim No. 90, which must be allowed, because the necessary explanation has been given.
I am of opinion that the affidavit of the claimant himself is sufficient proof of the loss of the original bill obligatory on which the claim No. 4 is founded; and that the production of a copy, so proved, as in this instance, with the other testimonials thereto annexed, amount to a sufficient authentication of the claim, according to the act of Assembly, (s) The claim No. 4 must therefore be allowed.
It is an established rule, that no claim can be allowed wffiich did not exist, as such, against the deceased himself, in his life-time. Upon this ground claim No. 123 must be rejected ; and claim No. 47, as stated by the auditor, is also clearly inadmissible.
It appears from the auditor’s second report, that sundry claims have been withdrawn and re-stated. It is a rule in suits of this kind, that every creditor who comes in after the institution of the suit, on petition, or by filing the voucher of his claim, is allowed to take the position of a plaintiff as fully, as regards his interest, as if he alone had filed the bill. And therefore, upon the ground that a plaintiff may be allowed to amend his bill; so a creditor may be permitted to withdraw his claim for the purpose of having it re-stated in a more correct form; but then, upon the principles in relation to amending a bill, according to which the amended bill is a virtual admission of the informality or invalidity of the plaintiff’s claim, as set forth in the original bill, so the re-statement must be considered as an implied abandonment of the claim in the form in which it was first stated. (t) This direction applies to the claims re-stated as from No. 152 to 158 inclusive, which now stand for adjudication only as they have been so re-stated.
In cases of this kind, it is the course of the court to allow a reasonable time after the auditor has reported a statement of the claims, for the creditors and parties to make a general scrutiny into the proposed distribution and its several parts; to take exceptions; to remove objections; or to produce further proof in support of their respective claims and pretensions. This reasonable time is, however, always estimated with reference to the time limited for creditors to bring in their claims, and to the time when the audi *360 tor has filed his first statement of the claims; for although as ill this instance, so far as it can be done without delay or prejudice to the creditors and parties in the case, any other claimants will be allowed to come in, who file the vouchers of their claims before the court has actually parted with the fund by a final distribution of it; yet they can have no claims upon the special indulgence of the court; and it will not postpone the distribution to give them time to remove objections, or to collect further proof in relation to their claims, (u) The circumstance of such a multitude of creditors having been gathered together, as in this instance, affords strong ground for asking all the indulgence which the nature of the case can authorize; but here there has been an allowance of time which must be admitted to have been sufficiently liberal for every purpose.
With regard to the second statement reported by the auditor. It is in general true as declared by the act of Assembly, that the expense of every statement of an account must be borne by him who desires it; (w) but in a creditor’s suit the expense of the auditor’s statements are borne, in general, by the estate; yet if any new and additional accounts are asked for, the expense of stating them must be defrayed exclusively by those creditors who by their tardiness in coming in have rendered such new or additional statements necessary. (x)
These directions apply to all the claims which have been filed since the auditor made his first report, and for whose special benefit the second statement was made; from the aggregate amount of whose dividends the expense of making it must be deducted. And also to all such claims as are not now sufficiently authenticated; which must be finally rejected.
Whereupon it is Ordered, that this case be, and the same is hereby referred to the auditor, with directions to state an account accordingly, &c.
In obedience to this order the auditor, on the 29th of December, 1831, stated and reported a final account as directed; which was, on the 9th of January, 1832, confirmed, and the proceeds directed to be applied accordingly, with a due proportion of interest.

 Mildred v. Neil, 2 Bland, 354, note; Ewing v. Ennalis, 2 Bland, 356, note; Watkins v. Worthington, 2 Bland, 512; Chambers v. Davenport, 12 Cond. Chan. Rep. 241.

 Gibson’s case, 1 Bland, 141.

 Strike’s case, 1 Bland, 68; Hammond v. Hammond, 2 Bland, 359.

 Arthur v. The Attorney-General, 2 Bland, 245, note.

 Strike’s case, 1 Bland, 79; Babington on Set-off, 3.

 Kennett v. Millbank, 21 Com. Law Rep. 213; Pattison v. Frazier, 2 Bland, 381, note.

 1798, ch. 101, sub ch. 9.

 Com. Dig. tit. Accompt, E,. 15; Babington on Set-off, 3; Poulter v. Cornwall, 1 Salk. 9; Godfrey v. Saunders, 3 Wils. 117.

 McCulloh v. Dashiell, 1 H. & G. 97.

 Salmon v. The Hamborough Company, 1 Cha. Ca. 204; Coppen v. Coppen, 2 P. Will. 295; S. C. Sel. Ca. Chan. 30.

 Ex parte Watson, 4 Mad. 477.

 Ex parte Elton, 3 Ves. 240; Gray v. Chiswell, 9 Ves. 118; Collyer Partn. 337.

 Selwyn N. P. 351.

 Watkins v. Worthington, 2 Bland, 509.

 Selwyn N. P. 408.

 Tidd’s Prac. 523.

 1798, ch. 101, sub ch. 9, s. 4.

 Watkins v. Worthington, 2 Bland, 509.

 1798, ch. 101, sub ch. 9, s. 4.

 Lindsay v. Lynch, 2 Scho. & Lefr. 9.

 Hammond ti. Hammond, 2 Bland, 364; Kent v. O’Hara, 7 G. & J. 212.

 1785, ch. 72, s. 17.

 Hammond v. Hammond, 2 Bland, 364.